**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2262-24

ROSEHELLER SQUARE, LLC,

     Plaintiff-Appellant/
     Cross-Respondent,

v.

VC ASSOCIATES, LLC, CLASSIC
EXPRESS CAR SERVICES, LLC,
VICTOR H. CELI, VERONICA
SOLANO,[1] HELMEL V.
VALLENCIA, SONIA J. SOLANO,
CESAR A. CALVA, OSCAR J.
PADILLA, and KEVIN A. CELI,

     Defendants-Respondents/
     Cross-Appellants,

and

RICARDO G. VALENCIA
SUQUILAND and DIEGO
VALENICA SARANGO,

     Defendants-Respondents.

_____

---

[1] Veronica Solano was improperly pled as Veronica Solao.

Argued June 3, 2026 – Decided July 9, 2026

Before Judges Mayer, Gummer and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-1224-19.

Eric J. Warner (Law Office of Eric J. Warner, LLC) argued the cause for appellant/cross-respondent.

Jacob S. Narva argued the cause for respondents/cross-appellants (Einhorn, Barbarito, Frost, Botwinick, Nunn & Musmanno, PC, attorneys; Bonnie C. Frost and Jacob S. Narva, on the briefs).

PER CURIAM

Plaintiff Roseheller Square LLC (Roseheller) appeals from two June 20, 2023 orders granting summary judgment to defendants VC Associates, Victor H. Celi, Veronica Solano, Helmel V. Vallencia, Sonia J. Solano, Cesar A. Calva, Oscar J. Padilla, Kevin A. Celi, Ricardo G. Valencia Suquiland, Diego Valencia Sarango, and Classic Express Car Services, LLC (Classic) (collectively defendants) and dismissing its six-count second amended complaint. In addition, Roseheller appeals from the orders denying its motion for summary judgment regarding certain counts in its complaint. Because we conclude the court erred in its analysis concerning two counts of Roseheller's complaint, we vacate the grant of summary judgment and remand for further proceedings as to those two counts. We affirm all other aspects of the court's June 2023 orders.

2

VC Associates cross-appeals from a February 14, 2025 order, following a bench trial, dismissing its counterclaim for failure to prove damages. Because we conclude the court failed to consider a potential aspect of damages, rent reduction, we vacate that order and remand for further proceedings regarding that issue.

I.

In 2016, VC Associates and Roseheller executed an Agreement of Sale (Agreement). The Agreement provided VC Associates would sell Block 748.01, Lot 20, "commonly known as 839-845 North 6th Street, Newark,[] New Jersey," to Roseheller for $1,050,000 (Subject Property). The Agreement provided for Roseheller to obtain various approvals and file for variances as needed. "If approvals [we]re not obtained within eighteen (18) months," Roseheller or VC Associates could terminate the Agreement.

In the Agreement, VC Associates "acknowledge[d] that [Roseheller wa]s purchasing th[e Subject P]roperty as an 'assembly' of various properties" (Adjacent Properties) and Roseheller could "terminate th[e] Agreement if [it wa]s unable to purchase all of the various properties simultaneously or contemporaneously[]."

3

In addition, the Agreement provided the "sale [wa]s subject to the [c]ommercial [l]ease early-termination agreement in the form of a 'buy-back' agreement between [VC Associates] and its commercial [t]enant, Electronic Auto Tech LLC" (Electronic Auto). Under the buy-back agreement, Electronic Auto "ha[d] agreed to sell its rights under the subject [c]ommercial [l]ease and to vacate the leased [Subject P]roperty upon receipt . . . of $20,000" after "hav[ing] been given a 90-day notice to vacate." VC Associates and Roseheller were "50/50 responsible for the 'buy-back' payment."

In August 2017, Maria J. Rivero, VC Associates' attorney, wrote to Roseheller's attorney, Jay Kanetkar, and inquired about the status of the preliminary approvals.

In May 2018, Kanetkar wrote to Rivero and advised that despite the Agreement's development-approval contingency, Roseheller was "comfortable with the approvals application . . . and . . . [we]re willing to close without the actual approvals." Kanetkar advised that Roseheller "would like to close as soon as [wa]s practicable" and acknowledged VC Associates had to provide its tenant with a ninety-day notice to vacate.

In June 2018, Rivero wrote to Electronic Auto and advised "the pending sale of the [Subject P]roperty [wa]s on the cusp of being consummated."

A-2262-24

Therefore, Rivero advised "you are hereby given notice that you must vacate the premises within ninety (90) days." Rivero further advised "you will be compensated in the amount agreed upon vacating the [Subject P]roperty."

In September 2018, after little progress toward closing, Rivero served Kanetkar and the real estate closing attorneys with a "NOTICE OF TIME OF THE ESSENCE." (Boldface omitted). She advised that VC Associates had "fixe[d] October 1, 2018, at 1:00 p.m. . . . for the closing." (Capitalization modified).

On October 1, 2018, after Roseheller did not appear at the closing, Rivero served Kanetkar and the real estate closing attorneys with "NOTICE OF CANCELLATION OF CONTRACT." (Boldface omitted). Rivero stated that as a result of Roseheller's failure to obtain approvals and its "failure to meet the Time of the Essence notice, [VC Associates] hereby declare[d] the contract null and void."

In response, Eric J. Warner, Roseheller's litigation counsel, advised Rivero that because of VC Associates' termination, Roseheller sustained considerable financial loss. Warner sought to "reinstate[]" the Agreement and set September 1, 2019, as a closing date under the terms of the Agreement. Alternatively, Warner advised litigation would proceed.

A-2262-24

On February 14, 2019, Roseheller filed a complaint against VC Associates. In its three-count complaint, Roseheller alleged VC Associates had breached the Agreement and the implied covenant of good faith and fair dealing and asserted it was entitled to specific performance.

VC Associates filed an answer with affirmative defenses and a counterclaim. In its four-count counterclaim, VC Associates alleged breach of contract, breach of the implied duty of good faith and fair dealing, its detrimental reliance, and Roseheller's bad faith.

On February 28, 2020, Roseheller closed on a single-family home. On September 29, 2021, Roseheller closed on several lots owned by the Spanish Manor restaurant. These properties comprised part of the Adjacent Properties.

In September 2021, Roseheller moved for leave to file a second amended complaint. Roseheller sought to add Classic, Victor H. Celi, Veronica Solano, Helmel V. Vallencia, Sonia J. Solano, Cesar A. Calva, Oscar J. Padilla, Kevin A. Celi, Ricardo G. Valencia Suquiland, and Diego Valencia Sarango. It contended Classic was a tenant of VC Associates and Victor H. Celi was a principal of VC Associates and Classic. Further, it asserted the other individually named defendants were members of VC Associates and were

"jointly and severally liable . . . for the torts committed with respect to [Roseheller]'s economic interests."

In its proposed six-count second amended complaint, Roseheller alleged defendants had:  breached the Agreement and "caused [it] and continue[d] to cause the Subject Property" and Adjacent Properties "waste and harm" by "abandon[ing] numerous disabled vehicles throughout the Subject Property and the" Adjacent Properties (count one); breached the implied covenant of good faith and fair dealing based on the same activities pled in the first count (count two); committed tortious interference with prospective economic advantage by "unilaterally . . . terminat[ing] the . . . Agreement" (count four); committed trespass by "enter[ing] onto and damag[ing its] . . . property and interests" based on the same activities pled in the first count (count five); and committed nuisance based on the same activities pled in the first count.  Roseheller also alleged VC Associates had "rendered the street to the [Subject P]roperty and [Adjacent Properties] impassable or available for visitation" (count six).  In the third count, Roseheller alleged it was entitled to specific performance.

In response to Roseheller's motion, defendants served Warner with a <u>Rule</u> 1:4-8 notice asserting the allegations contained in the proposed amended complaint were frivolous.  Defendants asserted Roseheller's claim for tortious

A-2262-24

interference with prospective economic advantage was barred and frivolous because VC Associates was a party to the Agreement. In addition, defendants contended Roseheller's claims for nuisance and trespass were frivolous because Roseheller did not own the Subject Property. Further, defendants asserted Roseheller's claims against the individual members of VC Associates were frivolous because they were "protected from liability under the New Jersey Limited Liability Company Act" and, thus, were "immune." Finally, defendants asserted Classic was not a tenant. Defendants claimed Roseheller "overlook[ed] the [A]greement and discovery" because Electronic Auto was the only tenant.

The court granted Roseheller's motion to file the second amended complaint. Defendants filed an answer, twenty-three separate defenses, and crossclaims for contribution and indemnification.

After the close of discovery, the parties moved for summary judgment. On June 20, 2023, the court heard the parties' arguments. The court placed its decision on the record and entered orders memorializing its decision. In one order, the court denied plaintiff's motion; in the other order the court dismissed counts one through six of the second amended complaint and granted VC Associates' motion for summary judgment on count one of its counterclaims.

A-2262-24

The court found Roseheller and VC Associates executed the Agreement for the sale of the Subject Property. It further found in 2018, eighteen months after the contract was executed, VC Associates had complained to Roseheller regarding the failure of the parties to close on the Subject Property.

The court found Kanetkar had advised Rivero that Roseheller was comfortable proceeding to closing without actual approvals. Further, the court noted Kanetkar's observation that VC Associates had an obligation to provide its tenants with a ninety-day notice to vacate. The court determined that Rivero sent a notice to vacate to Electronic Auto, which included an acknowledgment that Electronic Auto would "be compensated in the amount agreed upon vacating the property."

The court found, a few months after not receiving a response, Rivero had issued a Time of the Essence notice, scheduled the closing, and terminated the Agreement after Roseheller did not appear for the closing.

The court found Roseheller had "performed no due diligence whatsoever in this matter." In addition, the court noted the eighteenth-month approval period provided in the Agreement had expired. Therefore, "the [c]ourt f[ound] that Roseheller breached the [Agreement] by not appearing at the closing." Further, the court concluded that VC Associates had complied with the

9

Agreement and validly terminated it after Roseheller failed to obtain the approvals.

The court considered the other counts in Roseheller's complaint. The court determined "there was no basis for a breach of implied duty of good faith," because "[a] claim for breach of implied covenants cannot pertain to any matter specifically covered by the express covenant between the parties." Further, the court concluded "Roseheller's claim for tortious interference . . . [wa]s meritless." In this respect, the court found VC Associates was "a party to the . . . [A]greement" and VC Associates "was proper in terminating the [A]greement." Moreover, the court determined there was "no legal basis to bring . . . trespass and nuisance claim[s] against defendant[s] because [Roseheller] did not own the [Subject P]roperty." In addition, the court concluded "there [wa]s no basis for [Roseheller] to pierce the corporate veil against the individual members of VC Associates" and "the claims against Classic [we]re baseless."

The court denied Roseheller's motion for summary judgment in its entirety. Further, it granted summary judgment to defendants and dismissed Roseheller's second amended complaint. In addition, the court granted VC Associates partial summary judgment concerning the first count of its

counterclaim, alleging Roseheller's breach of contact. The court determined VC Associates' damages claim required a trial.

## A.

On appeal, Roseheller argues the court erred in denying it summary judgment and granting summary judgment to VC Associates regarding its claims for nuisance, trespass, and tortious interference with prospective economic claims.[2]

Roseheller argues the court granted VC Associates summary judgment on its nuisance, trespass, and tortious interference with prospective economic claims "without providing any reasoning." It contends it had previously purchased the Adjacent Properties and that VC Associates created "physical obstruction and [littered] industrial debris . . . at and about [its] real property." Further, Roseheller argues it produced an unrebutted expert report from economist Keith S. Balla, who offered an opinion regarding damages related to defendants' obstruction and contamination of its property.

---

[2] Roseheller has not briefed arguments concerning the dismissal of the other counts in its second amended complaint. Nor, has Roseheller briefed issues concerning the grant of partial summary judgment to VC Associates regarding VC Associates' counterclaim for breach of contract. Any arguments regarding those issues are deemed waived. See N.J. Dep't of Env't Prot. v. Alloway Twp., 438 N.J. Super. 501, 505-06 n.2 (App. Div. 2015) ("An issue that is not briefed is deemed waived upon appeal.").

Appellate courts review an order granting "summary judgment de novo, applying the same standard used by the trial court." Samolyk v. Berthe, 251 N.J. 73, 78 (2022). A court must grant summary judgment when "reviewing 'the competent evidential materials submitted by the parties,'" viewed in the light most favorable to the non-moving party, "'there are [no] genuine issues of material fact . . . the moving party is entitled to summary judgment as a matter of law.'" Grande v. St. Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)); R. 4:46-2(c).

In determining whether a genuine issue of material fact exists, we "must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). We do not "weigh the evidence and determine the truth of the matter but . . . determine whether there is a genuine issue for trial." Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). No genuine issue of material fact exists where the record "is so one-sided that one party must prevail as a matter of law." Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

"Where there is no material fact in dispute . . . '[an appellate court] must then decide whether the trial court correctly interpreted the law.'" N.J. Realtors v. Twp. of Berkeley, 479 N.J. Super. 379, 391 (App. Div. 2024) (quoting DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013)) (internal quotation marks omitted). "[T]he evaluation of every motion for summary judgment requires the court, trial or appellate, to review the motion record against not only the elements of the cause of action but also the evidential standard governing that cause of action." Bhagat, 217 N.J. at 40.

"A cause of action for private nuisance derives from the defendant's 'unreasonable interference with the use and enjoyment' of the plaintiff's property." Ross v. Lowitz, 222 N.J. 494, 505 (2015) (quoting Sans v. Ramsey Golf & Country Club, Inc., 29 N.J. 438, 448 (1959)). When New Jersey courts analyze nuisance claims, they "are guided by the principles set forth in the Restatement (Second) of Torts." Ibid. (quoting Smith v. Jersey Cent. Power & Light Co., 421 N.J. Super. 374, 389 (App. Div. 2011)).

Section 822 of the Restatement sets forth the elements for a private nuisance cause of action. It provides

> One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of

another's interest in the private use and enjoyment of land, and the invasion is either

> (a) intentional and unreasonable, or
>
> (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

[Id. at 505-06 (quoting Restatement (Second) of Torts § 822 (A.L.I. 1979)).]

"[H]owever, an 'intentional but reasonable' or 'entirely accidental' invasion does not trigger liability under a private nuisance theory." Id. at 506. (quoting Restatement § 822 cmt. a). Therefore, "an actor is no[t] . . . liable for accidental interferences with the use and enjoyment of land but only for such interferences as are intentional and unreasonable or result from negligent, reckless or abnormally dangerous conduct." Id. at 506-07 (quoting Restatement § 822 cmt. b). Under this principle, "[l]iability for an invasion of interests in the use and enjoyment of land . . . depends upon the presence of some type of tortious conduct." Id. at 507 (alteration in original) (quoting Restatement § 822 cmt. c).

"[Appellate] courts also apply the Restatement's standard of liability where a plaintiff pursues a trespass claim." Id at 510. Under section 158 of the Restatement, "[a] defendant is liable in trespass for an 'intentional[ ]' entry onto

14

another's land, regardless of harm." Ibid. (second alteration in original) (quoting Restatement § 158). A defendant can also be "liable if he 'recklessly or negligently, or as a result of an abnormally dangerous activity enters' onto another's land, and the entry causes harm." Ibid. (quoting Restatement § 165). Notably, "the placement of the object on the plaintiff's land must be a 'tortious[]' act, in that the conduct 'subject[s] the actor to liability under the principles of the law of Torts.'" Ibid. (alterations in original) (quoting Restatement § 161 cmt. a).

Therefore, "[l]ike a private nuisance claim under section 822 of the Restatement, a cause of action for trespass requires a showing of intentional, reckless or negligent conduct, or the conduct of abnormally dangerous activity." Ibid. (citing §§ 165-66). Under this standard, "a defendant is not liable in trespass for 'an unintentional and non-negligent entry on land in the possession of another,' regardless of the harm done." Ibid. (quoting Restatement § 166).

Under this well-established law, nuisance and trespass require the plaintiff to have an interest in the burdened property. Here, the court concluded Roseheller failed to establish its interest because it was not the owner of the Subject Property. However, the court's conclusion was too narrow because Roseheller's complaint also alleged defendants' actions as to its Adjacent

15                                                                    A-2262-24

Properties. Thus, we are constrained to vacate the order for summary judgment on the trespass and nuisance counts and remand for the court's consideration of the summary judgment standard and applicable law regarding those properties.

In addition, Roseheller argues the court erred in granting defendants summary judgment regarding its claims for tortious interference. On appeal, Roseheller contends it "seeks reimbursement for the rental payments it sought from the" Adjacent Properties, which defendants "rendered nearly inaccessible with garbage and debris."

However, Roseheller's argument on appeal differs from the allegation in its second amended complaint. In the complaint, Roseheller claimed defendants committed tortious interference with its prospective economic advantage by unilaterally terminating the Agreement.

"The recognized family of business torts includes both claims for tortious interference with a contract, see Restatement § 766, and claims for tortious interference with a prospective contractual relationship, see Restatement § 766B." Nostrame v. Santiago, 213 N.J. 109, 121 (2013) (citations reformatted). "The tort of interference with a business relation or contract contains four elements: (1) a protected interest; (2) malice—that is, defendant's intentional interference without justification; (3) a reasonable likelihood that the

A-2262-24

interference caused the loss of the prospective gain; and (4) resulting damages."

DiMaria Constr., Inc. v. Interarch, 351 N.J. Super. 558, 567 (App. Div. 2001).

Further,

> when considering the related concept of tortious interference with a prospective contractual relationship, the elements are:
>
> > One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
> >
> > (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
> >
> > (b) preventing the other from acquiring or continuing the prospective relation.
>
> [Nostrame, 213 N.J. at 122 (quoting Restatement § 766B).]

The court considered VC Associates' motion for summary judgment under the business torts theory. Thus, it held "there must be a protectible interest. There must be malice, there must be a reasonable likelihood that the interference caused the loss of prospective blame." The court found Roseheller's "allegations speak to . . . unilaterally terminating the [A]greement and speak to little else." Having determined VC Associates termination of the Agreement was proper, the

17

court granted it summary judgment on this claim. Roseheller has not appealed the court's finding that it breached the Agreement. Thus, we conclude there was no error in the court's determination in this respect.

Further, "[i]t is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court . . . unless the questions . . . go to the jurisdiction of the trial court or concern matters of great public interest." State v. Robinson, 200 N.J. 1, 20 (2009) (alteration in original) (quoting Neider v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)); see also Peer v. City of Newark, 71 N.J. Super. 12, 36 (App. Div. 1961) ("Generally, a party is restricted on appeal to the theory on which the cause is tried, and may not urge a new theory, especially if inconsistent on appeal."). We conclude there is no cause to depart from these general rules to consider Roseheller's tortious interference claim as it relates to garbage and debris.

B.

On February 10, 2025, the court held a bench trial regarding VC Associates' counterclaim for damages resulting from Roseheller's breach of the Agreement. The court heard testimony from Veronica Solano, on behalf of VC Associates, and Tony Gonz, on behalf of Roseheller. Gonz's testimony centered

on Roseheller's claims raised in its second amended complaint. His testimony was not germane to VC Associates' claim for damages arising from Roseheller's breach of the Agreement.

Solano testified that she was one of several owners of VC Associates. She testified that Electronic Auto was a tenant at the Subject Property, paying monthly rent in the amount of $4,000. Solano stated that VC Associates had approached Electronic Auto regarding canceling its lease. Solano stated she understood there was a $20,000 lease buyout, to be split evenly between VC Associates and Roseheller. She testified that VC Associates could not afford to pay the full amount and, thus, reduced Electronic Auto's rent by $500 a month in May 2016. Solano explained that after VC Associates terminated the Agreement, it advised Electronic Auto that it no longer had to vacate the Subject Property. She testified Electronic Auto remained in possession of its leasehold and continued to pay the reduced rent, even after the Agreement was terminated. Solano explained Electronic Auto "had some losses" and VC Associates agreed to extend their reduced rent.

Solano testified that between the time the Agreement was executed and the October 1, 2018 closing date, a church had wanted to rent the Subject Property. Solano explained because of the Agreement and the litigation, VC

19

Associates "couldn't lease . . . or rent to anybody." In addition, Solano testified "[t]here was . . . a Zumba instructor that wanted to rent the" Subject Property. Solano testified that VC Associates was "prevented" from renting the Subject Property until the court's June 23, 2025 order.

Solano testified that VC Associates' damages from Roseheller's breach of the Agreement totaled $431,000 plus attorney's fees.[3] Solano estimated that between the execution of the Agreement and the October 1, 2018 closing date, VC Associates was unable to "realize any rental revenue on" the Subject Property. She estimated that between May 2016 through October 2018, twenty-nine months, VC Associates lost "at least $5,000" a month or $145,000. In addition, she approximated that VC Associates had lost $5,000 a month from October 2018 to June 2023, fifty-two months, or $260,000. Further, she estimated the reduced rent from Electronic Auto equated to damages of $26,000. To reach that figure, she multiplied Electronic Auto's reduction in rent, $500 a

---

[3] Solano's testimony regarding attorney's fees concerned VC Associates' claim for fees under Rule 1:4-8 arising from Roseheller's second amended complaint. The testimony and claim for attorney's fees were not germane to the trial of VC Associates' claim for damages resulting from Roseheller's breach of the Agreement.

A-2262-24

month, by fifty-two months, May 2016 to September 2021,[4] when the rent was ultimately raised. Solano acknowledged Electronic Auto would have been entitled to only a $20,000 reimbursement; however, she explained VC Associates had given Electronic Auto an additional $6,000 so it "would stay."

On cross-examination, Solano admitted VC Associates had no signed leases or proposals with either the church or the Zumba instructor. She also did not recall the name of the church and thought the Zumba instructor's name was "John." Further, she testified that VC Associates did not rent the Subject Property because she and her partners "were discussing what to do with the place [and] whether to fix it." In response to a question from the trial court, Solano testified that aside from Electronic Auto, other areas of the Subject Property had not been leased for months.

In a decision placed on the record, the trial court considered Solano's testimony that the church and Zumba instructor wanted to rent space in the Subject Property. In addition, the court noted Solano testified that the Subject Property "had to be vacant at the time of closing," could not be rented "during

---

[4] On appeal, VC Associates states that "[a]t trial, . . . Solano . . . inaccurately stated the total number of months between May of 2016 and September of 2021 was fifty-two rather than sixty-four, and gave a final amount of damages that used this incorrect verbal math."

the contract," and could not be rented during the litigation. The court considered Solano's testimony that she "discussed [renting] with her partners and her partners didn't know if they wanted to fix the place. And they didn't know what to do." The court found VC Associates had not produced any rental agreements and, at the time of trial, still had "not rented the premises for an unknown reason." Thus, the court found VC Associates had "not proven any loss of rental."

On cross-appeal, VC Associates contends the trial court erred in concluding it had failed to establish damages. It argues it established damages in two respects: (1) the reduction in rent to Electronic Auto and (2) its inability to rent space as a result of the Agreement and Roseheller's breach.[5]

---

[5] On cross-appeal, defendants include arguments that Roseheller's second amended complaint was frivolous as to the individual defendants and Classic and they proved there was no tortious interference, nuisance, or trespass. Defendants contend they are entitled to collect attorney's fees under Rule 1:4-8. The trial court had concluded the claims were not frivolous based on Gonz's testimony. However, these arguments were not germane to the trial regarding damages for Roseheller's breach of the Agreement. Moreover, because we remand to the trial court on the nuisance and trespass claims, defendants' arguments are premature. See Bove v. AkPharma Inc., 460 N.J. Super. 123, 149 (App. Div. 2019) ("[A] frivolous litigation motion must be filed 'no later than [twenty] days following the entry of final judgment.'" (second alteration in original) (quoting R. 1:4-8(b)(2))). Depending on how these claims are resolved, defendants may move under Rule 1:4-8(b) at the appropriate time. We offer no opinion on these matters.

Our standard of review of a trial court's factual findings after a bench trial is well-settled. "Final determinations made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of review[.]" D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013) (quoting Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011)). "We may not overturn the trial court's fact[-]findings unless we conclude that those findings are 'manifestly unsupported' by the 'reasonably credible evidence' in the record." Balducci v. Cige, 240 N.J. 574, 595 (2020) (quoting Seidman, 205 N.J. at 169).

On an appeal from a bench trial, "[w]e give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017) (quoting Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015)). "[W]e do not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence." Mountain Hill, L.L.C. v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008) (quoting State v. Barone, 147 N.J. 599, 615 (1997)).

However, where the trial court's decision constitutes a legal determination, we exercise de novo review. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). "A trial court's interpretation

of the law and the legal consequences that flow from established facts are not entitled to any special deference." Ibid.

A party claiming breach of contract has

> the burden to prove four elements: first, that "[t]he parties entered into a contract containing certain terms"; second, that "plaintiff[s] did what the contract required [them] to do"; third, that "defendant[s] did not do what the contract required [them] to do[,]" defined as a "breach of the contract"; and fourth, that "defendant[s'] breach, or failure to do what the contract required, caused a loss to the plaintiff[s]."
>
> [Globe Motor Co, 225 N.J. at 482 (alterations in original) (quoting Model Jury Charges (Civil), 4.10A, "The Contract Claim—Generally" (approved May 1998)).]

The elements "must be proven by a preponderance of the evidence." Ibid. "The term 'preponderance of the evidence' means that amount of evidence that causes you to conclude that the allegation is probably true. To prove an allegation by the preponderance of the evidence, a party must convince you that the allegation is more likely true than not true." Model Jury Charges (Civil), 1.12H, "Preponderance of the Evidence (short version)" (approved Nov. 1998).

In granting VC Associates partial summary judgment, the court concluded VC Associates had sustained its burden regarding the first three elements for breach of contract. Thus, what remained of VC Associates' claim, and subject

24

to the bench trial, was whether VC Associates could establish Roseheller's breach had caused it a loss or damages.

VC Associates "was obligated to prove . . . that the losses it sought to recover were 'a reasonably certain consequence of the breach.'" Totaro, Duffy, Cannova & Co., L.L.C. v. Lane, Middleton & Co., L.L.C., 191 N.J. 1, 15 (2007) (quoting Donovan v. Bachstadt, 91 N.J. 434, 445 (1982)). In this respect, VC Associates' burden was twofold: (1) establish its losses were "a 'natural and probable consequence'" of the breach, ibid. (quoting Pickett v. Lloyd's, 131 N.J. 457, 474 (1993)); and (2) "demonstrate the appropriate method for quantifying that loss," ibid.

The court rejected Solano's testimony concerning potential renters and the reasons for the failure to rent the Subject Property. Applying well-established law, and given the highly deferential standard afforded to a trial court's assessment of witness credibility and evidentiary matters, we discern no reason to disturb the trial court's conclusion that VC Associates failed to sustain its burden regarding rental damages.

However, we conclude the trial court misstepped in failing to consider VC Associates' rent reduction to Electronic Auto as damages. According to Solano, VC Associates had embarked on rent reduction, as a means to satisfy

the buy-out, in 2016. In its May 2018 letter, Roseheller advised VC Associates to provide the buy-out notice to Electronic Auto. Under these circumstances, the rent reduction could be considered a damage caused by Roseheller's breach. On remand, the court should consider whether VC Associates established that the rent reduction was damages it incurred as a result of Roseheller's breach. We offer no opinion regarding whether Roseheller's breach caused VC Associates to be damaged by the rent reduction nor the amount of those alleged damages. We remand for the trial court, who heard the witnesses and considered the evidence presented at trial, to give this issue its full consideration.

In sum, we vacate the aspect of the June 20, 2023 summary judgment orders regarding Roseheller's trespass and nuisance claims concerning the Adjacent Properties and remand for the court's consideration of those claims in the context of the parties' summary judgment motions. We otherwise affirm those orders. We vacate the February 10, 2025 order and remand for the court's further consideration regarding VC Associates' rent reduction claim consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M. C. Hanley

Clerk of the Appellate Division

26